Next case is No. 2010, 1552, N. Ray Aoyama. Mr. Rourke. MR. ROURKE. If it pleases the Court, this appeal is about the construction of two means-plus-function claim elements. It is the appellant's position that the Patent Office did not properly apply N. Ray Donaldson and WMS Gaming because it disregarded the corresponding algorithmic structure when rendering a patentability decision about Claims 11 and 21, which contain these limitations. The structure disclosed in the specification that has these limitations is Figure 8, and this structure was identified to the examiner when the limitations were presented for examination. The examiner never rejected the claims under 35 U.S.C. Section 112, Paragraph 2, which would have been the proper outcome if there was no algorithmic structure in the specification. The examiner had several opportunities to do this, most notably, the third opportunity was after the case was remanded from the Board back to the examiner in December of 2008. That was three months after the guidance referenced in Note 6 of the Director's Brief. That guidance instructed examiners to reject claims under 112, Second Paragraph, if there was no corresponding algorithmic structure. And again, the examiner did not do that at any point during the prosecution. Mr. Brook, it seems to me that to some extent your argument is trying to jump from the fat to the fire. And if you're successful in convincing us that the Patent Office should have looked at Figure 8 as the structure supporting this Means Plus Function clause, then where is the algorithm shown in Figure 8? Figure 8 is just a number of boxes. For example, the first, transfer product between warehouses, yes or no. On what basis does one make that determination to transfer yes or no? Well, it's described in the specification in pages A60 and 61 of the appendix. More detail about what conditions are considered when making that transfer, but more importantly where is that? A60 and 61 in the appendix. That's the description of the flow chart algorithm of Figure 8. Can you be more specific as to where it tells you how you make that determination? Yes, sir. For example, it's in the description of the blocks 806, 810, and 814, which would be at line 30 on page A60. It's determined at 806 that product transfer between warehouses is not required. What page are you reading? This is page A60 in the appendix. So it actually starts at line 19 of the page. It's determined whether it's necessary to transfer a product between warehouses. In one exemplary embodiment, the transfer of product between warehouses can be performed in order to increase warehouse space at a first warehouse to accommodate a larger shipment than it would have been able to accommodate, so as to realize a cost for the cost of the product. In another embodiment, the product can be transferred between warehouses to accommodate product rollout, product deletion. So once the inventory data is known, a decision can be made based on these various factors at that functional block, whether to transfer data. But there's nothing that says if it's more than X amount, then you do this, or if it's less than Y, then you do that. How would you write a formula that would accomplish this function? Well, the requirements for that are not onerous. If you look at Harris versus Erickson, the flowchart algorithm that was relied on there for the algorithmic structure was essentially the same. They had a compare block that had no formula, and a formula is not required. Just as this Court has repeatedly held, the algorithm could be replaced as a flowchart. Yeah, but I mean, how would one ever write a program to accomplish this without knowing what the criteria are? Well, I guess the first thing you have to do is determine what the level of skill in the art is, which the Board did not do. Let's say that it was the most skilled programmer you can imagine. How would one write a program to accomplish a certain result when you don't know what the criteria are? Well, the criteria are set forth here. So inventory levels have an input, and then a decision. What inventory level? That's what I'm getting at. And I could see if it said, you know, if this warehouse is more than 80% full, and that warehouse is less than 80% full, then you should move inventory from this warehouse to that warehouse. I can understand that. But just to say, well, make a decision as to whether products should be transferred. On what basis? Well, the example is a little bit more explicit than that, Your Honor. And that is, if you wanted to purchase a large shipment, you know, such as 1,000 units, you know, I had a warehouse space for 50 units in one warehouse, and, you know, 950 units in the other warehouse, you would move that 50 to the other warehouse. I'm sorry. Yeah, I mean, I hear you, but I don't see those numbers, and I don't see that criteria in here. My problem is that even if you're successful with your argument, I think you have a difficult time establishing that this flowchart provides the structure necessary to support that claim. In other words, I think if you're successful in arguing that the Patent Office wrongly interpreted this claim under 112.6, you wind up with a problem under 112.2. Well, the limitation of Claim 11 is reverse logistics means for generating transfer data, and that generate transfer data is relatively broad. And there are three functional blocks in Figure 8 that use the word transfer, and that's the only place the word transfer is used in the entire specification. And as the board construed that term as data concerning a transfer, clearly those three blocks concern a transfer, a transfer between the three hierarchical components of the logistics system of the application, which is the warehouse system, the order controller system, and the distribution system. These have different locations within the hierarchy. Manufacturers can ship directly to the order controller of the warehouse system. They can't ship directly to the distribution system. So the normal flow for the logistics is shown, but any flow against that normal flow would be the reverse logistics. And then you look at the functional blocks in Figure 8, they all deal with transferring between the components of that hierarchy other than the normal forward flow of the logistics, which is how reverse logistics is used. But when this claim was submitted for examination, this flowchart algorithm was identified, and the examiner never said, no, this is not a flowchart algorithm. The examiner was told by the office to examine claims for that, and when the examiner was given the opportunity to reject the claims under 112 second paragraph, the examiner didn't. And I think that has to be given some weight. The board's determination is a core finding of fact, which was not based on anything in the record. And the dictionary evidence submitted in the brief shows that programmers rely on flowcharts to generate code. So unless NRA ZERCO is going to be overruled, this core finding of fact by the board cannot be the basis for the claim construction. But it has to be definite enough, doesn't it, to be able to have a person of ordinary skill in the art to practice the invention? Yes, Your Honor, it does. How is it indefinite in this particular case? Why is it indefinite? It's not indefinite because I believe that the use of the terminology generate transfer data was selected specifically to focus on these three functional blocks. And in a related case, I was able to obtain an expert affidavit that one of ordinary skill in the art, a programmer with 20 years of experience, would be able to write code based on these flow diagrams. Is transfer data defined in the written description? Yes, it is. Especially under the board's construction of data concerning a transfer, any one of these three functional blocks, 806, 810, and 814, would be transfer data because they concern a transfer. But isn't there a problem because if you look at flowchart 8, under figure 8, is there really a means plus function there if there's no means plus function in figure 8? If I understand your question, I think that assumes that the flowchart figure 8 is not an algorithm. But I think by definition, a flowchart algorithm is an algorithm. So we're taking it on the basis that the board found it to be anticipated by Yang on the finding that it's definite, it meets 112.2 requirements, and it's a means plus function, and there's an algorithm in it. Yes, sir. I'm sorry, I don't understand the question. If in fact it is anticipated by Yang, then those particular claims are definite. I would disagree. I think if the claims are definite, and this is the algorithmic structure, Yang does not disclose this algorithmic structure or an equivalent. It doesn't disclose what, the transfer data? That's correct. This particular type of transfer data set forth in this algorithm. But I wonder if the transfer data is specifically defined in the written description to have someone be able to program what Judge Lin was pointing out to trying to develop a program from figure 8. Well I think such a question of fact certainly at worst is something that the Patent Office should address, and I should be given the opportunity to submit a declaration from one skill in the art that it is sufficient for them to create programming. But it's certainly not necessary for code to be disclosed, and this Court has again told applicants that they can disclose the algorithm as a flow chart, which is what was done here. Were any claims allowed? One claim was allowed, yes. Well I don't want to stray too far from the issues here, but I'll tell you what I think is the flaw. As I understood it, and I'll ask the solicitor's representative the same thing, the 112.6 was put into the statute to facilitate claiming a function. Before that you couldn't claim the function. The novelty still had to be in the function, and Now if the novelty, and therefore the invention, is in the structure, and whereas the function you have some extremely simple steps in the claim itself, which if you look at it without adding all of the superstructure from figure 8, reads directly on the prior art, and we see this from time to time, and I wonder if there isn't a fundamental misunderstanding that needs to be restored as to how 112.6 works, so that inventors and clients aren't led into going down the wrong path. It may very well be that claims with more detail from figure 8 or elsewhere would avoid what otherwise looks to me like anticipation. If you look at the function, because you say it's limited by the structure and the specification, but if in fact the function is old, you can't even get to that stage. From your expression I gather you don't share that view of 112.6, but I'm confident that it was once how 112.6 worked. If it doesn't work that way anymore, perhaps it's in advance. Well I respectfully disagree. I mean there are a number of means plus function claims and issued patents that were examined, I think in an art other than software arts, the understanding of 112.6 and the structure is much more developed, and there could be a very short description of the function, where if the only structure for performing that function in the specification is very complex, you would be requiring an applicant to put all the details from that structure into the claim. At least sufficient detail to distinguish from the prior one. I rather agree with you. I see those claims as well, and as a result there's nothing but debate as to what they mean and how they should be construed. Perhaps it's in advance to put less in the claim and more in the specification. I guess some countries do it that way. Let's hear from the office, and we'll save you rebuttal time. Thank you, Your Honor. May it please the Court? Mr. Crowes. Thank you. The primary issue that needs to be resolved on this appeal is whether or not Figure 8 provides structure to support the means plus function limitation in the claims. As we explained in the red brief, the office does not believe that it does. Not only is there no clear algorithm that would allow somebody to program a computer to perform that function, but there's no specific description in the specification, even the pages Mr. Rourke cited, that even ties any of the steps to a particular computer. It's not clear that this particular algorithm is computer implemented. Even if it is, we've got the next problem as mentioned by Judge Lynn, that we still wouldn't know how to program it. When you say there's no algorithm, how much detail are you placing in the usage of algorithm? The mathematical formula? The ones and zeros? I think algorithm is a very dangerous term in this Court and other Courts' jurisprudence. But you used it several times. I apologize for that. I'm bound by precedence in that regard. I'm using it in the sense of the aristocrat case, which, for instance, said we're looking for something more than a statement that a general purpose computer could perform this function. We're looking for the algorithm that that computer performs. I'm thinking of the algorithm that was in WMS Gaming, where you had this mathematical formula mapping one set of numbers onto another. That's the sort of thing that this Court's precedent suggests we should be looking for in an algorithm. As I said, I don't think this case even really gets that far, because I don't see any of the steps in Figure 8 being specifically even attempted to be tied to a computer. To me, it reads like some decision-making process, similar to the section from the MPEP, which refers to a flowchart. It's really a flowchart for how somebody in control of one of these distribution systems would operate the system. Mr. Krause, it seems to me that, in some respects, the examiner or maybe the office just sort of drifted into a pre-Donaldson mode here in this application, because of the fact that the application itself is, shall we say, a little difficult to understand. It almost seemed to me that the office was saying, well, we know what the function is in the means plus function clause. We know we need to find the corresponding structure. Let's go find the structure. And first stop is Figure 8, because that would be a natural connection. And Figure 8 rings hollow for some of the reasons that I mentioned earlier. And then the office, with the idea of, well, we've got to find the corresponding structure someplace. Let's go and hunt for it. The office seemed to latch on to little bits and pieces here and there, almost like a pre-Donaldson approach that means means whatever it takes to do this function. Having concluded that, well, there are boxes that do this, so let's look at the prior art, and the prior art has boxes that do this, so that's enough. It seems to me that that's a little bit adrift of the normal rigors of a 112-6 analysis. The conclusion is, from my perspective, it seems to me that the office perhaps would have been better served to simply step up to the plate and confront this as a 112-2 problem because of the indefiniteness. I think your point is very well taken. The examiner issued this particular rejection in a final office action in 2006. Subsequent to that, as you mentioned on page 22 of our brief in September 2008, the PTO put out some post-aristocrat guidance that gave a little more push towards examiners to go towards the indefiniteness rejections in claims like this. I think you're right. The examiner and then the board affirmed it, gave the applicant the benefit of the doubt as to whether there was support. But you see the risk in sort of concluding that, well, we'll give the applicant the benefit of the doubt. That sort of drifts a bit to a pre-Donaldson world, I believe. I think it's a fair criticism and perhaps it shouldn't have been done, but I think the examiner here was working with the broadest reasonable interpretation standard, which kind of works hand-in-hand with the indefiniteness standard. It's basically saying here's an interpretation of your claim. Here's how it's anticipated by the prior art. Please amend your claim. Let me ask you this. If we were to conclude that that is indeed the case, that the office really drifted away from our precedent and should have rejected this under 112-2, are we at liberty to so conclude, or does Chenery stand in the way of that? I don't think Chenery stands in the way in this case, simply because the reasoning is so very close. In other words, And it's a legal question. And it's a legal question. You know, the examiner, again, just gave the benefit of the doubt. Obviously, the examiner could have stopped and said, no, that's not supported. And if you so find, then we're right at the indefiniteness rejection, which the examiner would otherwise have made if she had not given the benefit of the doubt to the applicant. But does the benefit of the doubt cut into that particular point? In indefiniteness, even if we find that it's indefinite, we can't conclude that as a legal matter, can we? Should we send it back? I think it is a claim construction question, a question of law, whether or not there's support in the specification for a particular limitation. If you conclude that under your cases, like Aristocrat, the examiner, as Judge Lynn suggests, went too far in suggesting that the parts of the specification she found to support the limitation actually did support it, then I think it would be perfectly legitimate for you to say, no, there's no support there, and therefore should have been an indefiniteness rejection. Affirm the PTO, because the rejection is the same. Would the applicant at least be entitled to some opportunity to amend the claims? If that was a conclusion that we would make, the applicant might otherwise feel a little bit blindsided. Well, as I said, it's almost exactly the same rejection. When we made our anticipation rejection, that's an invitation to amend the claims. That's an indication we disagree about what you think this claim means. It's abundantly clear from this record that there is such a disagreement, and, of course, the applicant has had that opportunity. The applicant even now can still file a continuation to amend the claims. As Mr. Rourke mentioned, there is another application in which, actually, I'll amend that. I checked that application. It's now been abandoned, and I also take issue with Mr. Rourke's characterization of that application. In that application, it didn't involve the reverse logistics means of Figure 8. There, I would have to say, the expert was actually making an argument very similar to what the examiner made here. The expert found that the specific boxes performed the function, and that gave the support, and the examiner accepted that. So if we agreed on your footnote 6, we could decide the case of indefinite misdemeanors without sending it back? I certainly believe so. I think everything in the case is here. Chenery doesn't impede us from doing it. Well, I don't think, I think if you correct, if it is a correction, if you decide you're correcting the PTO's finding of law on this question of whether or not there is support for generating transfer data in the place the PTO found it, I think the inevitable result of that is if it came back to the PTO, the PTO would be bound to reject it under Section 112.2. So I don't think there's a need to bring it back to us simply for that reason. If there was never a rejection on indefinite grounds, then this applicant hasn't had a chance to respond? Well, this applicant has made it abundantly clear already that he believes that that particular limitation is not supported by the spec. In other words, I think the application, the applicant is a stopped up and down to argue against the indefiniteness rejection that we're talking about now. He's placing all his marbles on Figure 8. He's already conceded, or he's affirmatively vigorously arguing, that the sections of the specification that the examiner pointed to do not support this limitation. But he's dealing with 112.6? That's quite different. If there's no support in the specification for the 112.6 limitation, that ultimately is a 112.2 limitation, is it not? Well, but with an opportunity to adjust the claims to resolve the question of indefiniteness, which I think is different in terms of the 112.6 reference to the specification, as opposed to having a specific limitation which might have been inserted in the claims, which might be sufficiently definite to overcome a 112.2 concern. I mean, as a matter of fair prosecution, if the entire prosecution was based on 112.6 and the applicant hasn't had a chance to resolve 112.2 issues in the give and take of examination, isn't the right thing to do to provide that opportunity? Well, the applicant certainly will have that opportunity by means of a continuation. I don't- We could command with instructions to reopen prosecution for the purpose of providing a response, could we not? We could. And then provide the applicant the opportunity to amend the claims to cure that indefiniteness problem. In that way, the applicant would not be unfairly prejudiced because it's- I mean, I certainly agree with you that the applicant could file a continuation, but that comes with some fees and some delays and everything else. Maybe a remand with instructions would be a more straightforward way to handle it. Okay. Standing here right now, I can't think of an objection to that approach. So if that's what the court wishes to do, we just hope that the court will agree with us that Figure 8 does not support the claim limitation in this case. Okay. Any more questions, Mr. Krauss? Thank you, Mr. Krauss. Mr. Roark. Thank you, Your Honor. If this court finds that Figure 8 is not capable of providing the corresponding structure, it will essentially be overruling Harris v. Erickson and all voice computing where similar flowchart algorithms were the structure. And in the related case, I disagree with the Patent Office. The expert testified that the flowchart algorithms were algorithms. The finding of fact number three by the Board was that Figure 8 was not an algorithm. But I think by definition, a flowchart algorithm is an algorithm. If this court decides that it's not, that will create an enormous amount of uncertainty about what level of detail is needed to support 112.6 and computer software implemented inventions. So I would disagree with that. And I think it focuses on the fact that I've never had an opportunity to submit a declaration from an expert that disagrees with the Patent Office. The Board made the decision that Figure 8 was not a flowchart algorithm. The examiner never did that. The examiner was aware of this when the case was remanded back to the examiner in December 2008. The examiner had received the guidance referred to in Footnote 6 that instructed the examiner to reject a 112.6 limitation if there was no algorithm. The examiner did impose some rejections following the remand, but it was under 101. And notably, the examiner did not reject Claims 11 or 21 under 101, which means the examiner understood that those claims were drawn to a special purpose processor and were patentable subject matter. So I think the examiner's findings on this, though not explicit, have to be given weight. It would be improper for this Court to decide, as the Board did, that there's no way that this flowchart Figure 8 could be shown to be an algorithm. But we need to send it back to make a determination of indefinite? I think that if it goes back, I mean, this Court cannot allow the claim. If it goes back, hypothetically, if we decide that the proper rejection should have been indefinite, do we need to send it back? Absolutely. It would have to go back. I mean, this Court can't allow the claim. So it can either reverse the examiner because the examiner's determination that Yang disclosed the algorithmic structure was incorrect, or it can find that there's no algorithmic structure and reverse the office and say you should have rejected this under 112 paragraph 2. If you agree that Chenery requires us to send it back? Generate? Chenery. Is there a Chenery problem, an administrative law problem? Yes. Yes, sir. Yes, Your Honor. I'm sorry I didn't recognize the case name, but I think it would be improper for this Court to rule on the fact of whether the question of Figure 8 is an algorithm. Because, as I indicated, if it does hold that Figure 8 does not disclose an algorithm, that creates enormous amounts of problems with flowchart algorithms and other issued patents. I would also note that the Board was specifically asked to identify whether they were rejecting this claim under 112 second paragraph, and they did not do so. So that issue has been well addressed by the Patent Office, and the Patent Office has had plenty of opportunity to address that. The reason why the appellants are here today is because they were relying on this Court's extensive case law interpreting 112 paragraph 6, Henry Donaldson, WMS Gaming, and all the progeny, where algorithmic structures such as flowcharts was the corresponding structure. And in the Office guidance, it says that the flowchart algorithm can be expressed, or the algorithm can be expressed as a flowchart. So I think that there's a lot of danger if the Court decides to hold that Figure 8 does not constitute an algorithm, because it is an algorithm, and I would like the opportunity, if this goes back, to submit an expert declaration that says that one of ordinary skill in the art would understand how to implement that and create software code. I also note that there is software packages available that will take an algorithm and convert it into computer code. So it's not difficult. It has been automated to that point. Okay. Any more questions? No questions. Okay. Thank you, Mr. Roy, and thank you, Mr. Krause. The case is taken into submission.